# WALLING, ADMINISTRATOR OF THE WAGE AND HOUR DIVISION, U. S. DEPARTMENT OF LABOR, *v.* HARNISCHFEGER CORPORATION.

No. 956.   Argued May 1, 1945.—Decided June 4, 1945.

*Mr. Irving J. Levy*, with whom *Assistant Solicitor Hugh B. Cox, Messrs. Ralph F. Fuchs, Douglas B. Maggs* and *Archibald Cox* were on the brief, for petitioner.

*Mr. Leo Mann*, with whom *Messrs. Louis Quarles* and *Maxwell H. Herriott* were on the brief, for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

Here, as in *Walling* v. *Youngerman-Reynolds Hardwood Co., ante,* p. 419, we are concerned with the problem of whether a particular type of wage agreement meets the requirements of Section 7 (a) of the Fair Labor Standards Act of 1938.[1]

Respondent is a Wisconsin corporation engaged in producing electrical products for interstate commerce. About one-half of respondent's production employees, called incentive or piece workers, are involved in this case.

As a result of collective bargaining by their union, these employees entered into a collective agreement with respondent whereby they are each paid a basic hourly rate plus an "incentive bonus" or "piecework earnings." The various jobs performed by these incentive workers are "time studied" by the management. The time which the job is shown to consume is multiplied by a "standard earning rate"[2] per unit of time. The amount so obtained is known as the "price" placed on that job. When an employee is given work on a job that has been so priced, he receives a job card bearing the price.

The worker is paid his agreed base or hourly rate (ranging from 55 cents to $1.05 per hour) for the time which

[1] 52 Stat. 1060, 29 U. S. C. § 201 *et seq.*

[2] The "standard earning rate" is the hourly rate of pay which workers in the Milwaukee, Wisconsin, district receive for that type of work. This "standard earning rate" is not the base rate of any worker in respondent's plant, nor is it the average hourly earned rate of any worker.

he takes to perform the job. If the job price exceeds this base pay, he ultimately receives the difference between the two amounts. The excess of the job price over the hourly earnings is known as an "incentive bonus" or "piecework earnings." Thus the sooner a job is completed the greater will be this incentive bonus. When the job price is smaller than the hourly earnings the employee receives only the hourly rate for the time worked, being assured of that rate regardless of his efficiency or speed. About 98.5% of the incentive workers, however, work with sufficient efficiency and speed to earn compensation over and above their base pay. These incentive bonuses were found by the District Court to form about 22% of the total compensation received each pay-day by these workers, exclusive of overtime payments, although respondent claims that the bonuses vary from 5% to 29% of each payroll.

On many jobs which have not been "time studied" the respondent has agreed to pay, and does pay, each incentive worker an hourly rate at least 20% higher than his basic hourly rate. And when an incentive worker is temporarily assigned to "non-incentive" work he is paid at least 20% more than his basic hourly rate. Moreover, vacation pay is based on an employee's average hourly straight time earnings over a three-month period and not on his base rate.

These incentive workers frequently work in excess of the statutory maximum workweek. For these extra hours they receive a premium of 50% of the basic hourly rate, which does not reflect the incentive bonuses received. Likewise, when incentive workers are working on jobs that have not been "time studied" or are temporarily doing "non-incentive" work they receive overtime pay on the basis of their basic hourly rates rather than on the 20% higher hourly rates actually paid them during the non-overtime hours.

The Administrator of the Wage and Hour Division of the Department of Labor brought this action to compel

the respondent to comply with the provisions of § 7 (a) of the Act. In defense, respondent pointed to the provision in the collective contract to the effect that "the parties agree that, for all purposes, the regular rate of pay at which each employee who participates in an incentive plan is employed, is the base rate of each such employee." The District Court held that the respondent was violating the Act by excluding from the computation of overtime the piece rate actually paid. 54 F. Supp. 326. The Seventh Circuit Court of Appeals reversed that judgment by a divided vote. 145 F. 2d 589.

Our attention here is focused upon a determination of the regular rate of compensation at which the incentive workers are employed. To discover that rate, as in the *Youngerman-Reynolds* case, we look not to contract nomenclature but to the actual payments, exclusive of those paid for overtime, which the parties have agreed shall be paid during each workweek.

It is evident that all the incentive workers receive a guaranteed basic hourly pay as a minimum. As to those who receive no regular additional payments during their non-overtime hours the respondent complies fully with § 7 (a) by paying them one and one-half times the basic hourly rate for all overtime hours. But the vast majority of the employees do receive regular though fluctuating amounts for work done during their non-overtime hours in addition to their basic hourly pay.

(1) Those who receive hourly rates at least 20% higher than their guaranteed base rates clearly are paid a regular rate identical with the higher rate and the failure of respondent to pay them for overtime labor on the basis of such a rate is a plain violation of the terms and spirit of § 7 (a). No contract designation of the base rate as the "regular rate" can negative the fact that these employees do in fact regularly receive the higher rate. To compute overtime compensation from the lower and unreceived rate

is not only unrealistic but is destructive of the legislative intent. A full 50% increase in labor costs and a full 50% wage premium, which were meant to flow from the operation of § 7 (a), are impossible of achievement under such a computation.

(2) Those who receive incentive bonuses in addition to their guaranteed base pay clearly receive a greater regular rate than the minimum base rate.[3] If they received only piece work wages it is indisputable that the regular rate would be the equivalent of the translation of those wages into an hourly rate. *United States* v. *Rosenwasser*, 323 U. S. 360. It follows that piece work wages forming only a part of the normal weekly income must also be an ingredient of the statutory regular rate. Piece work wages do not escape the force of § 7 (a) merely because they are paid in addition to a minimum hourly pay guaranteed by contract. Indeed, from another viewpoint, the incentive employees so compensated are in fact paid entirely on a piece work basis with a minimum hourly guaranty.[4] The conclusion that only the minimum hourly rate constitutes the regular rate opens an easy path for evading the plain

---

[3] This is shown by the following example. An incentive worker is assigned a basic rate of $1 an hour and works 50 hours a week on 15 "time studied" jobs that have each been given a "price" of $5. He completes the 15 jobs in the 50 hours. He receives $50 basic pay plus $25 incentive pay (the difference between the base pay and 15 job prices). In addition, the worker receives $5 extra for the 10 overtime hours. This is computed on the basis of 50% of the $1 base rate, or 50 cents an hour premium. Actually, however, this worker receives compensation during the week at the actual rate of $1.50 an hour ($75 divided by 50 hours) and the overtime premium should be computed on that basis, giving the worker a premium of 75 cents an hour or $7.50 for the 10 overtime hours.

[4] Thus, in the example given in footnote 3, the worker earns $75 during the week exclusive of the overtime premium. This $75 may be considered either (1) the amount received for completing the 15 "priced" jobs with a $50 minimum guaranty or (2) the sum of the $50 hourly pay and the $25 piece work pay.

design of § 7 (a). We cannot sanction such a patent disregard of statutory duties.

In this instance 98.5% of the incentive employees receive incentive bonuses in addition to their guaranteed hourly wages, demonstrating that such bonuses are a normal and regular part of their income. Once the parties agree that these employees should receive such piece work wages, those wages automatically enter into the computation of the regular rate for purposes of § 7 (a) regardless of any contract provision to the contrary. Moreover, where the facts do not permit it, we cannot arbitrarily divide bonuses or piece work wages into regular and overtime segments, thereby creating an artificial compliance with § 7 (a).

It matters not how significant the basic hourly rates may be in determining the compensation in situations where incentive bonuses are not paid. When employees do earn more than the basic hourly rates because of the operation of the incentive bonus plan the basic rates lose their significance in determining the actual rate of compensation. Nor is it of controlling importance that the respondent now pays a premium for overtime employment so as to make the overtime rate somewhat above the piece work earnings per hour.[5] Until that premium is 50% of the actual hourly rate received from all regular sources, § 7 (a) has not been satisfied.

Respondent also points to the fact that the incentive bonuses are often not determined or paid until weeks or even months after the semi-monthly pay-days, due to the nature of the "priced" jobs. But § 7 (a) does not require the impossible. If the correct overtime compensation cannot be determined until some time after the regular pay period, the employer is not thereby excused from making the proper computation and payment. Section 7 (a)

---

[5] The overtime rate now paid amounts to about one and one-third or one and one-fourth the regular hourly rate of actual earnings.

requires only that the employees receive a 50% premium as soon as convenient or practicable under the circumstances.

The judgment of the court below is reversed and that of the District Court is affirmed.

*Reversed.*

MR. JUSTICE FRANKFURTER, concurring.

The Fair Labor Standards Act, 52 Stat. 1060, 29 U. S. C. § 201 *et seq.,* does not prohibit employment at piece-work rates. It merely requires that piece-work earnings be converted to an hourly basis for determining the minimum and overtime requirements of that Act. *United States* v. *Rosenwasser,* 323 U. S. 360. Nor does the Act bar an agreement establishing an hourly "regular rate" that does not fall short of the statutory minimum even though it be complicated by a guaranteed weekly lump sum wage adapted to the circumstances of a particular employment, provided it is not a mere artifice unrelated to wage-earning actualities. *Walling* v. *Belo Corp.,* 316 U. S. 624; *Walling* v. *Helmerich & Payne,* 323 U. S. 37. Accordingly, the Fair Labor Standards Act does not preclude a wage agreement whereby piece-rate payments are related, fairly and not evasively, partly to regular hours of work and partly to overtime. Piece rates need not necessarily be so adjusted that they cannot fairly be designed as part of the overtime but must necessarily help "load" the regular hourly wage.

But a properly apportioned overtime function for piece work should be clearly indicated as such in the employment contract. No doubt a law which, while covering piece rates, speaks in terms of hourly rates presents difficulties both for those charged with the law's enforcement and for those under duty to obey it. But if a wage agreement is to escape the obvious arithmetic way of calculating hourly rates based on piece-work rates, by dividing

the total earnings by the hours worked, it is not too much to require that the function of piece rates as an overtime factor, if such they be, be clearly formulated. The contract should leave no such dubiety as to the role of the piece rate to the regular hourly rate as the two arrangements before us. It should not be left to courts to work out a hypothetical mathematical interpretation which, if it corresponded with the actual arrangement, could satisfy the statute.

MR. CHIEF JUSTICE STONE, dissenting.

I think the judgment in both these cases should be affirmed as to all piece work employees and in No. 956 the judgment should be reversed only as to employees working exclusively on the hourly wage basis.

The respondent in each of these cases has entered into a wage contract with its employees, which places in their pay envelopes a weekly wage in excess of the minimum hourly wage rate which the Fair Labor Standards Act prescribes for the work week of forty hours and the additional overtime hours which they work in each week. There is no contention that the contracts were not entered into fairly and in a good faith effort to satisfy all the requirements of the law and to provide the employees with a wage higher than the prevailing rate of pay for like hours of work, with time and a half for overtime. The contract involved in No. 956 was the result of collective bargaining between the respondent employer and the C. I. O. Union of its employees. Both employers and employees desire to continue the contracts, the employers because the employees are satisfied and labor disputes will consequently be avoided, the employees because they receive a larger wage than if they worked at prevailing hourly rates of pay with time and a half for overtime as the statute prescribes.

Under each contract the employees receive for the first forty hours of the work week a guaranteed minimum

hourly wage which is equal to or greater than the minimum wage prescribed by the statute. For overtime they receive one and one-half times the hourly wage and in addition a bonus, the amount of which is dependent upon the amount of piece work which they do during the work week. The bonus constitutes an addition to the hourly wage, both regular and overtime, so that in fact the compensation both for time and overtime is greater than the statute requires. The only question involved in either case is whether there is anything in the Fair Labor Standards Act which compels the bonus payment to be added to the stipulated time and overtime hourly wage in any different proportions than the wage itself is distributed.

The Government concedes that the statute does not require respondents to put their piece workers on hourly wage rates and that they may continue to pay piece work rates and comply with § 7 of the Fair Labor Standards Act, provided only that piece work earnings be "translated or reduced by computation to an hourly basis for the sole purpose of determining whether the statutory requirements have been fulfilled." Such is the effect of our decision in *United States* v. *Rosenwasser,* 323 U. S. 360, 364.

The method of translation urged by the Government and adopted by the Court is to ascertain the average hourly rate of pay by dividing the total weekly piece work wage by the number of hours worked. The hourly rate thus obtained, multiplied by the total number of hours worked per week, plus one-half of the hourly rate multiplied by the number of work hours in excess of forty will, it is said, give the weekly wage which the Fair Labor Standards Act requires respondents to pay to their piece work employees. The adoption of this method in the present cases requires the payment of an additional amount as overtime compensation which, according to the Court's theory, is not compensated by the weekly piece work wage, however high it may be.

This conclusion is based on two mistaken assumptions. One is that the weekly piece work wage, however high, cannot be taken to include any of the wage differential which the Act requires to be paid for overtime hours. The other is that the statute requires that the employer, who pays to his piece time employees a lump sum weekly wage more than enough to pay the hourly minimum rate plus time and a half for overtime, must nevertheless treat the total wage as comprising only the hourly wage paid for all the hours worked, without including anything for overtime. In short, the contention is that the statute requires the distribution of the piece work bonus between the first forty hours worked and the overtime hours in such proportions as would violate the statutory requirement for the payment of an increased rate for the overtime hours. It thus excludes the possibility that the bonus could be distributed in proportions which would compensate the first forty hours at any hourly wage above the minimum statutory requirement and compensate for the overtime hours at one and one-half times that rate.

To ascertain whether the piece work rate can be lawful compensation for time and overtime for which it is paid, the Court, like the Government, starts with the assumption that it is unlawful, not because it is inadequate in amount but because the bonus was either not intended to be or cannot be taken to be an appropriate increase in the guaranteed overtime compensation, as well as an increase in the guaranteed, regular hourly rate of pay. By assuming that a wage, ample to satisfy minimum demands of the statute for time and overtime, is nevertheless intended to violate the statute by adding all of the bonus to the average hourly wage alone, the conclusion is reached that no increase in overtime compensation has been paid from the bonus. The wage must therefore be correspondingly increased in order to give added compensation for overtime.

Undoubtedly one could translate a piece work wage into an hourly rate which would violate the statute by treating the piece work wage as compensating for the hourly rate without time and a half for overtime. But that has not been done by the parties here. Such is not the necessary effect of the bonus payment, and there is no ground for assuming that such was intended. The fact that the bonus is to be added to a guaranteed minimum hourly rate for both time and overtime would seem to establish the contrary. Certainly no employee under such a contract could doubt that its purpose and function is to pay him for time and overtime at a rate above the statutory minimum. Even though the bonus payments were not thus labeled, where a lawful end may be attained by a lawful means we are not free to assume that it was attained by unlawful means.

The purpose of the Fair Labor Standards Act was to insure to every worker to whom it applies a minimum hourly wage and a fifty percent higher wage for his overtime hours. It was not to force increases in wages paid for time and overtime which are already above the statutory minimum. One may search the statute and its legislative history in vain for any hint that employers who, like respondents, are paying in excess of the statutory minimum wage for time and overtime, are compelled to increase the wage merely because they have failed to label the pay envelope as containing the wage for both time and overtime.

The fallacy of the position now taken becomes apparent at once upon comparison of the following examples, in each of which the employee works fifty hours a week, ten of which being overtime must under the statute be compensated at an hourly wage rate of one and a half times that paid for the first forty hours.

Example 1: The employee works upon an hourly basis at the rate of $1.00 per hour. His wage, as the statute

commands, would be $40.00 for the first forty hours of his employment and $15.00 for the ten hours of overtime at the statutory rate of one and one-half times the agreed hourly rate, making a total weekly wage of $55.00.

Example 2: The employment contract, as in the present cases, provides that the employer guarantee the payment of a fixed minimum hourly rate of pay equal to or greater than the statutory minimum plus one and a half times that rate for overtime, plus such additional amount as the employee may earn on a piece work rate. If the guaranteed hourly rate were $1.00 an hour, and the employee's earnings at the piece work rate were $66.00, his wage would be the weekly guaranteed minimum of $55.00 plus the $11.00 piece work bonus at the piece work rate, or $66.00 in all. His weekly wage on the hourly basis would be calculated as follows:

Minimum $1.00 per hour for forty hours........ $40. 00
Bonus addition 20¢ per hour for forty hours..... 8. 00
Guaranteed minimum overtime $1.50, ten hours. 15. 00
Bonus addition for overtime 30¢ an hour for ten hours ................................. 3. 00

Total............................. $66. 00 [1]

It will be noted from Example 2 that the weekly piece work wage is sufficient in amount when "translated or reduced by computation" to pay an hourly rate of $1.20 an hour for the first forty hours of work and $1.80 an hour for the remaining ten hours of overtime. The statute, see § 7, requires no more.

In Example 2, the guaranteed rate of $1.00 per hour and $1.50 per hour for overtime would satisfy every statu-

---

[1] If a equals the hourly rate the following formula would apply to the fifty hour week in which the piece work wage is $66.00:
$$40a + (1\frac{1}{2}a \times 10) = \$66.00$$
$$55a = 66.00$$
$a = \$1.20$, the hourly rate for forty hours.
$1\frac{1}{2}a = \$1.80$, the hourly rate for overtime hours.

tory requirement, even though no bonus were added to the weekly wage. It seems plain that the addition of the bonus does not involve the payment of an unlawful wage or any omission to pay the lawful wage. If the employer and employee can lawfully agree to work for $1.20 an hour for the first forty hours and for $1.80 per hour for the additional ten overtime hours, making $66.00, the weekly piece work rate, I can find nothing in the Fair Labor Standards Act or in the principles of fair dealing and common sense to forbid a contract by which the employee is paid the sum of $66.00 for a week's work of fifty hours, or any larger amount, for piece work done in the period of fifty hours.

No basis is suggested for saying that the employer in satisfying the overtime requirements of the statute must distribute a lump sum weekly piece work wage between the wage payable for the first forty hours and that paid for overtime in such proportions as to render the wage contract illegal rather than in proportions which express the required statutory time and overtime wage relationship of one to one and one-half. There is nothing in the statute requiring the wage contract, the pay envelope, or the pay roll to designate separately the part of the weekly wage which is for the forty hours regular time and that portion which is paid for the additional hours of overtime. It is enough that the weekly wage is that mutually agreed upon in good faith, that it is intended to pay for time and overtime, and that it is sufficient in amount to pay for the first forty hours at a rate above the minimum wage prescribed by the statute and to pay for the overtime at one and one-half times that rate.

When, as here, the wage contract guarantees an hourly wage with one and a half times that rate for overtime, it is obviously just and reasonable and in conformity to the statute to divide the piece work bonus between the regular hours of work and the overtime hours in the same pro-

portions. Under the formula adopted by the Court the employer could pay no piece work rate high enough to dispense with what is thought to be the requirement to increase the weekly wage in order to pay the wage differential for overtime for which, by hypothesis, no piece work rate of pay compensates. Thus a piece work rate which would pay to the employee a weekly wage sufficient to pay several times the minimum hourly rate prescribed by the statute for time and overtime would not be lawful without a wage increase to compensate for the overtime. Despite the Government's assurance that the statute does not preclude employment on piece work rates, and our decision to that effect in the *Rosenwasser* case, *supra,* the goal of lawfulness could never be attained by the adoption of such a rate of compensation, since the piece work wage, however great, can never be regarded as including the wage differential for overtime even though the parties so agree.

All this is in flat contradiction to *Walling* v. *Belo Corporation,* 316 U. S. 624, in which we held that nothing in the Fair Labor Standards Act bars an employer from contracting to pay his employees minimum hourly rates for time plus one and a half times those rates for overtime in excess of the minimum statutory rates, with a lump sum weekly guaranty which in some weeks exceeds the wage at the stipulated hourly rate. There we held that the guaranteed weekly wage was compensation for overtime as well as for regular time. We decided that the contract contemplated that the excess of the guaranteed weekly wage over the stipulated minimum at the hourly rate was to be so distributed as to recognize the wage differential for overtime, in such a way as to satisfy the statutory requirements, even though the wage contract did not explicitly so declare. 316 U. S. at 632. That case is controlling here. In the present case the "regular rate," within the meaning of § 7 (a) (3) of the Act, is, as in Ex-

ample 2, the stipulated minimum hourly rate plus a part of the bonus, and the bonus is, as the wage contracts have treated it, an addition both to the regular rate and the overtime rate, which the statute permits.

Neither *Overnight Motor Co.* v. *Missel,* 316 U. S. 572, nor *Walling* v. *Helmerich & Payne,* 323 U. S. 37, is applicable here. In the *Missel* case "there was no contractual limit upon the hours" which the employer could require the employee to work for the agreed weekly wage, and "no provision for additional pay in the event the hours worked required minimum compensation greater than the fixed wage," 316 U. S. at 581. Hence the court was unable to say that the fixed weekly wage was intended by the parties to cover both base pay and fifty percent additional for the hours actually worked over the statutory maximum. In the *Helmerich* case, *supra,* no attempt was made by the employer to apply the asserted regular hourly rate to the first forty hours of the work week, the actual wage paid being greater. In consequence the overtime wage was less than one and one-half times the hourly wage in fact paid during the first forty hours of the work week. This was an obvious failure to comply with the overtime pay requirements of the statute.

Even though Congress could have compelled an increase in wages above the statutory minimum for time and overtime in the case of all employers who pay wages on the piece work basis, Congress has not done so by the Fair Labor Standards Act or adopted any policy penalizing employers who are so misguided as to add a bonus to a guaranteed lawful minimum hourly wage for time and overtime. It is not our function to prescribe wage standards or policies which Congress has not adopted.

Mr. Justice Roberts joins in this opinion.