FERRER et al. v. WATERMAN S. S.
CORPORATION.

TORRES et al. v. SAME.

ALGARIN et al. v. SAME.

Civ. Nos. 3741, 4034, 4035.

District Court, Puerto Rico.

March 8, 1947.

Arturo Ortiz Toro, of San Juan, P. R., for plaintiffs.

James R. Beverley, of San Juan, P. R., for defendant.

Philip F. Herrick, U. S. Atty., of San Juan, P. R., for the United States.

COOPER, District Judge.

These consolidated cases are before me on objections to the report filed by the Special Master. Both the United States and the Waterman Steamship Company have filed exceptions to the Master's report. I do not consider it necessary that these exceptions or objections be considered seriatim. Plaintiffs' case must fail if I conclude that the contention of the defendant as to rate of pay and classification of work be sustained. It is the contention of defendant that compensation during the so-called extraordinary hours for periods of work should be considered as overtime and that all overtime due should be compensated at one and one half times the so-called regular rate, the regular rate being work performed from 7 a. m. to 12 M. and 1 p. m. to 4 p. m. Defendant also contends that certain plaintiffs whose names appear in a motion filed by defendant on July 24, 1946 should be stricken from the complaint because of their failure or refusal to appear and identify themselves as the person or persons who are entitled to participate in such award of overtime pay as may be allowed.

In order to determine the issues involved a careful study of the contracts entered into between the parties should be made These contracts between the longshoremen's union and the several steamship companies arrived at by collective bargaining divide the work day into what is termed "the regular working day" and "extraordinary hours". One contract uses the term "overtime" instead of "extraordinary hours." It seems to me a distinction which has been suggested as to each of these terms is of very little importance. I am not concerned with the terminology used but to refer to extraordinary hours as "overtime" does not affect one's interpretation of the contract. Overtime really is properly considered as extraordinary hours. It means the hours worked after forty during any work week. A compensation or period of work may be designated as overtime but a consideration of the entire contract at the same time may show that it is not the overtime provided for in the Fair Labor Standards Act of 1938, 29 U. S.C.A. § 201 et seq. I am bound to follow the act as interpreted by the highest court in the land.

Let us now examine somewhat in detail the contracts under which plaintiffs' claims are based. The issues in this case must be determined in accordance with the terms of the contracts. Dr. McCabe and Professor Taft have given us a very interesting and in fact fascinating discussion of the history of overtime compensation but their testimony cannot, in my opinion, aid in the solution of this controversy. It is unnecessary to attempt an analysis of all the contracts in evidence because they are as a rule identical. I have before me a contract which states that the regular working hours shall be from 7 a. m. to 12 M. and from 1 p. m. to 4 p. m. All other hours and holidays shall be considered "extraordinary hours." The designation of extraordinary hours is not material. Whatever may be the term used the fact is that the terms of the contracts force us to the conclusion that these are not the same as overtime under the Fair Labor Standards Act. The same contract as well as all of the others provide specific and varying rates of pay for each hour of the working days, for holidays and for special noxious or difficult cargo, such as cement, fertilizer, creosoted lumbers, etc. I quote from the contract the scale of compensation agreed upon between the parties:

"The hours of work and the wages for working days, extraordinary hours and holidays, according to the cargo to be handled, shall be as follows:

### GENERAL CARGO

| From | To | Work Days | Holidays |
|------|------|-----------|----------|
| 7 A.M. | 12 M.D. | $0.55 | · $0.77 |
| 12 M.D. | 1 P.M. | 0.90 | 1.00 |
| 1 P.M. | 4 P.M. | 0.55 | 0.77 |
| 4 P.M. | 6 P.M. | 0.77 | 0.84 |
| 6 P.M. | 7 P.M. | 0.90 | · 1.20 |
| 7 P.M. | 11 P.M. | 0.77 | 0.84 |
| 11 P.M. | 12 M.N. | 0.90 | 1.25 |
| 12 M.N. | 6 A.M. | 0.84 | 1.02 |
| 6 A.M. | 7 A.M. | 1.30 | 1.40 |

### SPECIAL CARGO

Cement, Fertilizer, Creosoted Lumber, Scrap Iron, Suchal, Calcium, Raw Sugar in San Juan and Mayaguez

| From | To | Ashore | Aboard | Ashore | Aboard |
|------|------|--------|--------|--------|--------|
| 7 A.M. | 12 M.D. | $0.60 | $0.66 | $0.88 | $0.93 |
| 12 M.D. | 1 P.M. | 1.00 | 1.10 | 1.10 | 1.30 |
| 1 P.M. | 4 P.M. | 0.60 | 0.66 | 0.88 | 0.93 |
| 4 P.M. | 6 P.M. | 0.80 | 0.85 | 1.02 | 1.03 |
| 6 P.M. | 7 P.M. | 1.10 | 1.30 | 1.65 | 1.90 |
| 7 P.M. | 11 P.M. | 0.80 | 0.85 | 1.02 | 1.03 |
| 11 P.M. | 12 M.N. | 1.10 | 1.30 | 1.65 | 1.90 |
| 12 M.N. | 6 A.M. | 1.02 | 1.08 | 1.08 | 1.08 |
| 6 A.M. | 7 A.M. | 1.25 | 1.50 | 1.45 | 1.70" |

A study of the above table shows that it bears no relation to hours in excess of forty in any given week. It will also be observed that the hours for which the higher rate is paid are hours when most men would prefer to be eating lunch, or dinner, or at home asleep—in other words, disagreeable hours. These hours are compensated for at a higher rate in the same manner that "special" cargo is compensated for at a higher rate than "general" cargo. Holidays—of which a long list is included in the contracts—also are compensated for at a higher rate. Different rates in connection with "special" cargo are provided for work ashore and aboard. No one, I daresay, would contend that the extra or increased compensation for workers with "special" cargo could be considered as overtime.

■ It may be conceded that parties may by contract fix a regular or basic rate of pay and at the same time provide for an increase in the basic rate for excess hours or for work performed at unusual or undesirable hours. It may be that at the same time the regular or basic rate must be used in computing overtime. It would, of course, have to appear that the parties had agreed as to the basis of computing overtime and provided always that the basic rate as well as the overtime does not violate the provision of the Fair Labor Standards Act. In other words, the increased compensation due to work performed during the extraordinary hours, while it could not be considered as overtime, it should not form a basis for computing overtime compensation where excess hours have been worked during any week. See Walling v. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L. Ed. 1716. In the instant case, a simple answer to plaintiffs' contention and the suggestion as to what could be done by con-

tract, is that the contracts here involved do not provide for the classification urged by defendant. The parties in this case did not see fit to enter into such a contract. They did not provide for the payment of overtime for the extraordinary hours, instead they specifically provided a series of regular or basic rates which fluctuated according to the time of day and the cargo handled, and bore no relation to hours worked in excess of forty. They were "the higher rate necessary to induce defendant's employees to accept employment at hours which were not very desirable from a workman's standpoint" and were "the 'regular rate'" for those hours. See Cabunac et al. v. National Terminals Corporation, 7 Cir., 139 F.2d 853. They were in the nature of the "incentive bonus" dealt with in Walling v. Harnischfeger Corporation, 325 U.S. 427, 65 S.Ct. 1246, 1248, 89 L.Ed. 1711. In that case the Court said "no contract designation of the base rate as the 'regular rate' can negative the fact that these employees do in fact regularly receive the higher rate." The fact that the longshoremen's contract in the instant cases specified that regular hours were from 7 a.m. to 12 M. and from 1 p.m. to 4 p.m. cannot negative the fact, plainly set forth in the contract, that these plaintiffs regularly received the higher rate of pay.

I must hold therefore that the varying rates of pay received by the plaintiffs under their contract were regular rates, and not overtime. Therefore, the Master's report in that respect must be approved.

■ The fact that these suits are disapproved by labor leaders and that they violate both the spirit and the letter of a contract duly negotiated through collective bargaining does not afford any basis for this court to give any other interpretation to the contracts than as already indicated. It would be difficult to sustain plaintiffs' complaint if it rested only on moral grounds. As already indicated, I am bound by the interpretation of similar contracts by the Supreme Court of the United States and also by circuit courts of appeal. Objection has been made by the United States as to the method employed by the Master in computing the overtime. The Master computed the amounts due under the formula of the Missel case, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, that is, he divided the actual compensation received by the number of hours worked. I believe this was the correct method, stated in the Missel case. This process simply determines the rate per hour for which the claimant has been paid and is the basis for calculating the overtime compensation due. It includes the fluctuating rates of pay per hour in the computation and as a practical matter reflects the "regular rate of pay." I cannot, therefore, approve the objection of the United States Government with respect to the method of calculation. The Waterman Steamship Company objects to that part of the report awarding overtime compensation to certain plaintiffs who did not appear and testify despite repeated requests for them to do so. At an earlier stage defendant made a motion, setting forth the names of said plaintiffs, moving that the complaint be dismissed as to them. This motion remained undisposed of until the Master rendered his report.

■ Many of the plaintiffs whose names are set forth in the motion are persons having like or similar names and defendant certainly should have been afforded an opportunity to have these men identified. Defendant cannot be put in the position of paying a judgment in favor of, say, Jose Ortiz, only to have the true Jose Ortiz appear later to demand his money. It is incumbent on plaintiffs to establish their claims by a preponderance of the testimony. The answer denies that any amount is due to any plaintiff. Surely it is not unreasonable to expect that a plaintiff whose claim is denied by the defendant be required to identify himself as the person to whom the compensation is due. It is true that the names of these plaintiffs appear in the company's records. For the reasons indicated, however, that is not an answer to defendant's request that the plaintiffs be definitely identified. The objections as to these plaintiffs must therefore be sustained and the complaint dismissed as to all plaintiffs set forth in defendant Waterman Steamship Company's motion of July 24, 1946.

Judgment will be entered accordingly in favor of all plaintiffs with the exception of those listed in the motion of July 24,

1946, for the amounts set forth in the Exhibits attached to the Special Master's Final Report.