Peter J. BRENNAN, Secretary of Labor, Successor to James D. Hodgson, United States Department of Labor, Plaintiff,

v.

The STATE OF NEW JERSEY et al., Defendants.

Civ. A. No. 1457–71.

United States District Court,
D. New Jersey.
Oct. 1, 1973.

William J. Kilberg, Sol. of Labor, U. S. Dept. of Labor, Francis V. LaRuffa, Regional Sol., U. S. Dept. of Labor, by Laurel J. McKee, Supervising Atty., U. S. Dept. of Labor, for plaintiff.

George F. Kugler, Jr., Atty. Gen. of N. J., by Theodore A. Winard, Deputy Atty. Gen., for defendants.

## OPINION

BARLOW, District Judge.

This proceeding is brought by the Secretary of Labor pursuant to the provisions of § 17 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. A. § 217 (1961) (hereinafter referred to as the Act, or FLSA), wherein the Secretary seeks to enjoin violations of §§ 206, 207, and 215(a)(2) of the FLSA. There being no disputed issue of fact between the parties with regard to the alleged violations of § 207 of the Act, this case comes before the Court on partial cross-motions for summary judgment. Fed.R.Civ.P. 56.

Defendants are the State of New Jersey and those State Hospitals named in the complaint. While states are normally exempt under the FLSA, such exemption was removed under the 1966 Amendments to the FLSA with respect to state employees in schools, hospitals and institutions. 29 U.S.C.A. § 203(d).

Pursuant to N.J.S.A. 52:14–17.13,[1] the State of New Jersey, through the defendant hospitals, has compensated hospital employees working overtime by means of a plan of compensatory time-off. Under this plan, employees are granted one and one-half hours compensatory time-off for every one hour of overtime worked. While such compensatory time-off may, if possible, be taken during the same week when earned, in practice the demands of these institutions make it impossible for employees to do so. Indeed, the State of New Jersey concedes that it is a practical impossibility for these hospitals to give compensatory time-off in the week in which it is earned without threatening the quality of medical and health services.

The present dispute centers around the alleged failure of the defendants to comply with the provisions of § 7 of the FLSA regarding overtime compensation. Section 7 of the Act, in pertinent parts, provides as follows:

"(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than

---

1. N.J.S.A. 52:14–17.13:

"The work week for basic annual salary for employees in the State service, insofar as practicable and except as provided in section 2 of this act, shall not be more than 40 hours; and, notwithstanding any inconsistent provisions of law, any employee in the State service who is authorized or required to work in any week more than the hours of work established as the regular and normal work week for that class or agency shall be eligible to receive, at the discretion of the department head with the approval of the State Treas-

urer, the President of the Civil Service Commission and the Director of the Division of Budget and Accounting in the Department of the Treasury, either (1) compensation for the hours worked in excess of the established work week for that class or agency at a rate representing 1½ times the individual's hourly rate calculated by a proration of the annual salary rate of the individual employee, or (2) compensatory time off at the rate of 1½ hours for each hour worked in excess of the established work week for that class or agency."

forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.A. § 207.

Plaintiff argues that the defendants' practice of allowing employees to take compensatory time-off for overtime hours, as opposed to promptly paying their employees for overtime hours in cash, is violative of § 7 of the FLSA. We agree with the plaintiff.

The Administrator of the Wage and Hour Division of the United States Department of Labor has issued two Opinion Letters interpreting § 7 of the Act. Opinion Letter No. 913 (December 27, 1968) states:

> "An employer may not credit an employee with compensatory time (even at a time and one-half rate) for overtime earned which is to be taken at some mutually agreed upon later date subsequent to the end of the pay period in which the overtime was earned, rather than pay cash for the overtime as it is earned."

The same interpretation is given by the Administrator in Opinion Letter No. 868 (October 18, 1968). Such administrative interpretations are to be given considerable weight in construing federal legislative acts. Idaho Sheet Metal Works v. Wirtz, 383 U.S. 190, 205, 86 S. Ct. 737, 15 L.Ed.2d 694 (1966), reh. den., 383 U.S. 963, 86 S.Ct. 1219, 16 L. Ed.2d 305 (1966).

Section 531.27 of the Secretary of Labor's determinations and interpretations under the FLSA clearly states that overtime compensation is to be paid in cash or negotiable instruments payable at par. 29 C.F.R. 531.27 (1972). The only exception to the payment of cash overtime is set forth in § 3(m) of the Act, wherein the statute allows the employer to include "board, lodging, or other facilities" in computing the wage to be paid. 29 U.S.C.A. § 203(m). The term "other facilities" was not meant to include compensatory time. In Schultz v. Hinojosa, 432 F.2d 259, 267 (5th Cir. 1970), the Court held that the term "other facilities" should "be considered as being in pari materia with the preceding words 'board and lodging'". Furthermore, the Department of Labor's interpretations define "other facilities" as "something like board or lodging", and proceed to list examples such as meals, housing, tuition payments, merchandise available at company stores, fuel and transportation. 29 C.F.R. 531.-32 (1972).

In his Opinion Letter No. 913 (December 27, 1968), the Wage-Hour Administrator makes reference to what appears to be the sole exception to the general rule against the use of compensatory time:

> "However, it is permissible for the employer employing one at a fixed salary for a fixed work-week to lay off the employee a sufficient number of hours during some other week or weeks *of the pay period* to offset the amount of overtime worked (i. e. at the time and one-half rate) so that the desired wage or salary for the pay period covers the total amount of compensation including overtime." (Emphasis added.)

In fact, this is not really an exception to the rule of § 7 of the Act, but is in complete compliance therewith. For example, given a pay period of two weeks, with a fixed salary of $200.00 per week and a fixed workweek of forty hours, an employee works for fifty hours during the first week of the pay period. Under the above Opinion Letter, the employee may then work only twenty-five hours in the second week of the pay period (forty hours less time and one-half for the ten hours accrued overtime) while receiving his full gross pay of $400.00 at the end of the two-week pay period. This would comply with § 7 of the Act and the accompanying regulations and interpretations, since such wages are paid both promptly and in cash.

While the plan presently in effect in the named New Jersey hospitals may

similarly be construed to constitute cash payments of wages—in the sense that employees are paid in full in cash in subsequent pay periods when compensatory time is taken off—it can in no sense be construed to constitute prompt payment of such wages. The official interpretations of the Department of Labor regarding the overtime pay requirements of § 7 of the Act make it clear that promptness of payment is required:

"There is no requirement in the Act that overtime compensation be paid weekly. The general rule is that *overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends.* When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next pay day after such computation can be made . . . ." 29 C.F.R. 778.-106 (1972). (Emphasis added.)

The above section specifically states that overtime payment must be made within the regular pay period, unless for some reason delay is required to allow the employer to compute overtime payments. Where delay is unavoidable, the fifty per cent overtime premium may be paid as soon as practicable, but no delay is permitted in the payment of the employee's regular hourly rate for the overtime hours. Walling v. Harnischfeger Corporation, 325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711 (1945).

The State of New Jersey faces no apparent difficulty in computing the overtime due its employees at the end of each pay period. A simple mathematical computation should allow overtime to be paid in the pay period in which it is worked. Such prompt payment is mandated by § 7 of the Act. United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487 (2nd Cir. 1960).

The defendant, State of New Jersey, further alleges that the New Jersey overtime statute, N.J.S.A. 52:14–17.13, and its accompanying administrative regulations, present a program of employee benefits more beneficial to state employees than the scheme presented in § 7 of the FLSA, and, as such, the New Jersey compensatory time-off plan is preserved under § 18(a) of the Act. Section 18 provides, in its pertinent parts, as follows:

"(a) No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter . . . ." 29 U.S.C.A. § 218(a).

The express function of this portion of § 18 is to preclude the application of the FLSA where local law provides for a higher minimum wage or for a lower maximum workweek than the existing federal standard. See Eastern Sugar Associates v. Pena, 222 F.2d 934 (1st Cir. 1955), cert. den. 350 U.S. 900, 76 S. Ct. 178, 100 L.Ed. 791 (1955); State v. Comfort Cab, Inc., 118 N.J.Super. 162, 286 A.2d 742 (Bergen County Ct. 1972).

In their brief, the State of New Jersey relies on the case of Maldonado v. International Business Machine Corp., 56 F.R.D. 452 (D.P.R.1972), in support of their argument that State law must apply whenever it is more beneficial to an employee than the FLSA. However, unlike the case at hand, *Maldonado* does not deal with a situation where an employee is equally covered under both federal and local law and the question is which law should apply. Rather, *Maldonado* is concerned with a situation

where the plaintiffs' job status would probably not entitle them to overtime compensation under federal law, but where they would be entitled to such compensation under local law. Accordingly, the Court held that the law providing the more extensive overtime coverage, the Puerto Rican law, should apply. Such action is consistent with § 18 of the Act. The function of § 18 is to see that the FLSA shall not be used to deny an employee overtime compensation he may be entitled to under local or state law. No such denial occurs upon the application of the FLSA to the facts of the case at hand. As such, the compensatory overtime scheme enacted under N.J.S.A. 52:14-17.13 is not preserved under the provisions of § 18 of the Act.

Finally, the defendant State of New Jersey alleges that the application of the FLSA contrary to the State overtime plan is violative of the Tenth Amendment of the United States Constitution in that it unduly interferes with the performance of a state governmental function and is disruptive of the balance between the State and the Federal government.

The decision of the Supreme Court in Maryland v. Wirtz, 392 U.S. 183, 88 S. Ct. 2017, 20 L.Ed.2d 1020 (1968), upholding the constitutionality of the 1966 amendments to the FLSA, clearly rejects that contention:

"Indeed, appellants do not contend that labor conditions in all schools and hospitals are without the reach of the commerce power, but only that the Act may not be constitutionally applied to state-operated institutions because that power must yield to state sovereignty in the performance of governmental functions. This argument simply is not tenable." 392 U. S., at 195, 88 S.Ct., at 2023.

Nor does the possibility of additional fiscal responsibility on the state government curb the scope of congressional power to legislate. In Employees of the Department of Public Health and Welfare of Missouri v. Department of Public Health and Welfare of Missouri, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), the Court states:

"Where employees in state institutions not conducted for profit have such a relation to interstate commerce that national policy, of which Congress is the keeper, indicates that their status should be raised, Congress can act. *And when Congress does act, it may place new or even enormous fiscal burdens on the States . . . . we deal here with problems that may well implicate elevator operators, janitors, charwomen, security guards, secretaries and the like in every office building in a State's governmental hierachy. Those who follow the teachings of Kirschbaum v. Walling, supra, and see its manifold applications will appreciate how pervasive such a new federal scheme of regulation would be." 411 U.S., at 284–285, 93 S.Ct., at 1618. (Emphasis added.)

Accordingly, plaintiff's motion for partial summary judgment is granted and defendants' motion for the same relief is denied. An appropriate order will be submitted.