## BRESLIN v. NATIONAL SURETY CO.
### No. 4267.

Circuit Court of Appeals, Third Circuit.

Sept. 15, 1930.

Thomas C. Egan, of Philadelphia, Pa., for appellant.

A. S. Longbottom, of Philadelphia, Pa., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges and JOHNSON, District Judge.

JOHNSON, District Judge.

This is an action in assumpsit on a written indemnity agreement by the National Surety Company against John E. Zerbey and Andrew Breslin. The case was submitted to the jury and a verdict was rendered in favor of the plaintiff and against the defendant, Breslin, for $39,046.18. From the judgment entered on this verdict, an appeal has been taken to this court.

Zerbey was in the liquor business prior to National Prohibition. On the passage of the Volstead Act, 27 U.S.C.A. § 1 et seq., he desired to continue in the wholesale liquor business, but to do so he was required to give bond to secure his faithful performance in the use and distribution of alcohol which he was permitted to withdraw from the government warehouse. He first gave a bond in the sum of $5000; later a bond in the sum of $35,000; and when

he increased his withdrawals, he finally gave a bond for $100,000 on or about March 13, 1920, but it was dated back to January 23, 1920, the date of Zerbey's original $5,000 bond.

The Surety Company, as a condition precedent to its consent to execute the $100,000 required an agreement indemnifying it against all losses and expenses which it might incur in consequence of executing the bond purporting to be signed by both Breslin and Zerbey. Thereafter the Government asserted a claim upon the bond against Zerbey and the plaintiff, the National Surety Company, based upon violations of the Prohibition Act committed by Zerbey while operating under permit. On March 1, 1923, the Government brought its suit in the United States District Court for the Middle District of Pennsylvania against Zerbey and the plaintiff upon the bond. The plaintiff undertook the defense, employed attorneys and incurred expenses in connection with the suit amounting to upward of $28,000. The District Court dismissed the action, and the Circuit Court of Appeals certified the question involved to the Supreme Court of the United States, which court decided that the bond in question was not a penalty bond forfeitable in its entire amount upon breach of condition, but a bond of indemnity securing the payment of internal revenue taxes, if any, accruing by reason of the breach. There being no tax due the result was that the plaintiff escaped all liability under the bond. United States v. Zerbey, 271 U.S. 332, 46 S.Ct. 532, 70 L.Ed. 973, decided May 24, 1926.

In March, 1927, the plaintiff brought suit against Breslin and Zerbey upon the indemnity agreement to recover $28,135.30 for expenses incurred by reason of the Government's suit upon the bond and $7,-000 for unpaid premiums from January 23, 1920, to January 23, 1928. In his affidavit of defense Breslin denied that he executed the indemnity bond and alleged that the signature attached to the indemnity agreement was not his signature and that it was a forgery. At the trial he testified that his name had been written to the indemnity agreement without his knowledge by one Keating, a person connected with the office of the general agents of the National Surety Company in Scranton, Pennsylvania, and he denied all knowledge of the giving of the agreement at that time.

In August or September, 1920, Keating called Breslin over the telephone and informed him that he, Keating, had signed Breslin's name to the indemnity agreement but Breslin never at any time until just before the suit was brought against him in March, 1927, suggested to anyone that he had not signed the bond. Breslin with knowledge of the alleged forgery, went to Washington, when suit was brought upon the indemnity bond to take up with the Federal Prohibition Commissioner the matter of compromising the claim of the Government against John E. Zerbey. The Commissioner was in doubt as to Breslin's right to be heard in the matter and stated that the Government did not know Breslin in the transaction. Breslin's attorneys stated to the Commissioner that he was not a mere volunteer as he had signed the indemnity bond and had a right to be heard in the matter.

The court submitted two questions to the jury; first, whether Breslin had signed the indemnity agreement, and if not, secondly, whether Breslin ratified Keating's act of signing Breslin's name to the agreement.

The three principal assignments of error presented on this appeal are; first, that the Court erred in submitting to the jury the question whether Breslin had ratified Keating's act of signing the indemnity agreement; secondly, that the court submitted the case to the jury on an issue not raised by the pleadings, to wit: the ratification of the alleged forgery and, thirdly, that the court erred in giving further instructions to the jury in the absence of the parties and their counsel.

First, as to the assignment of error in submitting to the jury whether Breslin ratified the signing by Keating of his name to the indemnity agreement. Keating signed Breslin's name to the agreement witthout any knowledge or authority of Breslin. By the Act of Assembly of Pennsylvania of March 31, 1860, P.L. 382, 18 P.S. § 3631, it is provided: "§ 3631. If any person shall fraudulently make, sign, alter, utter or publish, or be concerned in the fraudulently making, signing, altering, uttering or publishing any written instrument, other than notes, bills, checks, or drafts already mentioned, to the prejudice of another's right, with intent to defraud any person or body corporate, or shall fraudulently cause or procure the same

to be done, he shall be guilty of a misdemeanor."

It is not a question of law for the court, but a question of fact for the jury whether Keating's signing of Breslin's name to the indemnity agreement was a forgery. In Commonwealth v. Wilson, 44 Pa.Super. 183, the defendant was convicted of forgery on the ground of an alteration in the destination written in a railroad ticket. On page 187 of this case, in 44 Pa.Super., Judge Orlady, delivering the opinion of the Court, said: "Text-writers and judges agree that as a general rule any writing in such form as to be the means of defrauding another may be the subject of forgery, or of alteration in the nature of forgery. The offense may be committed in respect to any writing; which, if genuine would operate as the foundation of another's liability. If it is calculated to deceive and intended to be used for a fraudulent purpose,—that is sufficient: 13 Am. & Eng. Ency. of Law (2d ed.) 1093. The offense of uttering a forged instrument consists in offering to another a false instrument which has capacity to injure, with a knowledge of its falsity, and with an intent to defraud: Whart. Crim. Law (11th ed.), sec. 703."

It is true, there must be added to the act of signing the intent to defraud, but the intention under all the circumstances in this case, is not a question of law for the court, but of fact for the jury. How can the court say, as a matter of law, that there was no intent to defraud when Keating signed Breslin's name to a $100,000 indemnity bond without Breslin's knowledge or authority. Breslin testified, after he knew of the alleged forgery, that Keating requested him not to expose the matter or cause any trouble. The question of forgery then was a question for the jury to determine in this case.

The question then arises whether there could be a ratification of the act of Keating if it were found to be a forgery. The court below held there could be such ratification and so instructed the jury, leaving the question of ratification, under the evidence in the case, to the jury. In the first place it is doubtful whether there is sufficient evidence to establish a ratification, but if there is sufficient evidence to submit to the jury on the question of ratification, the Supreme Court of Pennsylvania, where the contract was executed, has held consistently, beginning with Mc-

Hugh v. County of Schuylkill, 67 Pa. 391, 5 Am.Rep. 445, down to Austen v. Marzolf, 294 Pa. 226, 143 A. 908, that there can be no ratification of a forgery.

In Henry Christian Building & Loan Association v. Walton, 181 Pa. 201, on page 206, 37 A. 261, 59 Am.St.Rep. 636, Mr. Justice Fell, delivering the opinion of the court, said: "* * * where the transaction is contrary to good faith, and the fraud affects individual interests only, ratification is allowed; but where the fraud is of such a character as to involve a crime the adjustment of which is forbidden by public policy, the ratification of the act from which it springs is not permitted. Forgery does not admit of ratification. A forger does not act on behalf of, nor profess to represent, the person whose handwriting he counterfeits; and the subsequent adoption of the instrument cannot supply the authority which the forger did not profess to have."

In Shisler v. Vandike, 92 Pa. 447, 37 Am.Rep. 702, it was held: "Where a fraud is of such a character as to involve a crime, the ratification of the act from which it springs is opposed to public policy and cannot be permitted."

The courts of Pennsylvania have decided that a forgery cannot be ratified and that it is against public policy to permit a ratification of a forgery. In Parker v. Moore, 4 Cir., 115 F. 799, it was held: "A court of the United States will follow the rule laid down by the highest court of the state in determining whether a contract is governed by the laws of the place where it was made and to be performed or by the law of the forum, and also upon the question whether a contract is contrary to the public policy or statutes of the state." In this same case, Keller, District Judge, on page 802 of 115 F., said: "The United States courts will follow the rules laid down by the highest court of a state in the matter of determining whether the lex loci contractus or the lex fori shall govern. The federal courts will also follow the highest courts of the state in the construction of its statutes and its constitution, except where they may conflict with the constitution of the United States, or some statute or treaty made under it. Shelby v. Guy, 11 Wheat. 361, 6 L.Ed. 495; McCluny v. Silliman, 3 Pet. [270] 278, 7 L.Ed. 676; VanRensselaer v. Kearney, 11 How. 297, 13 L.Ed. 703; Webster v. Cooper, 14 How. [488] 504, 14 L.Ed.

510; Elmendorf v. Taylor, 10 Wheat. 152, 6 L.Ed. 289; Bank [of Hamilton] v. Dudley, 2 Pet. 492, 7 L.Ed. 496; Leffingwell v. Warren, 2 Black, 599, 17 L.Ed. 261; Jackson v. Chew, 12 Wheat. 153, 6 L.Ed. 583."

The court below rejected the decisions of the Pennsylvania courts and followed the case of Greenfield Bank v. Crafts, 4 Allen, Mass., 447, 454, as being logical and persuasive. The reasoning of the Massachusetts case may be more persuasive but the contract in question was made in Pennsylvania and the highest courts of Pennsylvania have decided that it is against the public policy of Pennsylvania to permit the ratification of a forgery. The decisions of the highest court of a state declaring an act against the public policy of that state should be favorably considered by the Federal courts. Parker et al. v. Moore, supra.

■ In the next place, the defendant raises the question on this appeal that the ratification of the forgery is not raised by the pleadings. In the plaintiff's declaration it is alleged that Breslin executed the indemnity agreement. In the affidavit of defense, the defendant denies that he executed the agreement and alleges a forgery. The issue then was whether Breslin executed the agreement or whether his signature was a forgery, and not whether his forged name was afterwards ratified; that was a separate and distinct question and issue not raised in the pleadings and a question of which Breslin was not reasonably apprized by the pleadings. If the plaintiff intended to hold that Breslin did not actually execute the indemnity agreement but subsequently ratified it, it should have been so stated in the declaration. Evidence of the ratification of a forged signature was not admissible under the plaintiff's statement of claim.

Section 5 of the Pennsylvania Practice Act of 1915, (Act of May 14, 1915, P.L. 483), 12 P.S. § 386, provides: "Every pleading shall contain, and contain only, a statement in a concise and summary form of the material facts on which the party pleading relies for his claim, or defense, as the case may be, but not the evidence by which they are to be proved, or inferences, or conclusions of law, and shall be divided into paragraphs numbered consecutively, each of which shall contain one material allegation. * * *"

In National Bank v. Lake Erie Asphalt Block Co. 233 Pa. 421, on page 428, 82 A. 773, on page 775, Mr. Justice Mestrezat, delivering the opinion of the court, said: "One of the grounds for a nonsuit, sustained by the court, was that the plaintiff's probata and allegata did not agree. An inspection of the statement will clearly disclose that the learned court was right in holding that the several offers of evidence were not admissible under its averments. The plaintiff made no offer to amend, but insisted on trying its case on the statement as filed. Notwithstanding the looseness of pleading which exists at present, the plaintiff is still required to file a declaration of his cause of action, which 'shall consist of a concise statement of the plaintiff's demand.' When the defendant is brought into court to answer a claim made against him, he is entitled to know the plaintiff's cause of action, that he may be prepared to meet it. The purpose of pleading is to form a clear and distinct issue for the trial of the cause between the parties. The statement should be sufficiently explicit to enable the defendant to prepare his defense. A plaintiff cannot file a statement which avers one cause of action, and be permitted, on the trial, to prove a different cause of action. He must state the claim on which he will rely to recover so clearly and concisely that the defendant may be fully advised as to what he is called upon to meet."

In Tucker v. United States, 151 U.S. 164, on page 168, 14 S.Ct. 299, on page 301, 38 L.Ed. 112, Mr. Justice Gray, delivering the opinion of the court, said: "'Pleadings of parties' are the allegations made by the parties to a civil or criminal case, for the purpose of definitely presenting the issue to be tried and determined between them."

Plaintiff in this case did not state its claim of ratification of the forgery on which it relied to recover "so clearly and concisely that the defendant may be fully advised as to what he is called upon to meet."

■ The last main question raised on this appeal was the error of the court in giving to the jury additional instructions after closing the charge to the jury and after the jury had retired to the jury room and returned to the court room for further instructions when counsel for Breslin had left the court room and without their knowledge or notice to them.

In Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853, the trial court sent to the jury supplementary instructions in writing on the question of contributory negligence in the absence of counsel, or notice to them. This was assigned as error. On appeal, Mr. Justice Pitney, delivering the opinion of the court, on page 81 of 250 U.S., on page 436 of 39 S.Ct., 63 L.Ed. 853, said: "We entertain no doubt that the orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties who attend for the purpose to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict. Where a jury has retired to consider of their verdict, and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given either in the presence of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object. Under ordinary circumstances, and wherever practicable, the jury ought to be recalled to the courtroom, where counsel are entitled to anticipate, and bound to presume, in the absence of notice to the contrary, that all proceedings in the trial will be had. In this case the trial court erred in giving a supplementary instruction to the jury in the absence of the parties and without affording them an opportunity either to be present or to make timely objection to the instruction. See Stewart v. Wyoming Ranche Co. 128 U.S. [383] 389, 390, 9 S.Ct. 101, 32 L.Ed. 439; Aerheart v. St. Louis, I. M. & S. Ry Co. [8 Cir.], 99 F. 907, 910, 40 C. C.A. 171; Yates v. Whyel Coke Co. [6 Cir.] 221 F. 603, 608, 137 C.C.A. 327; and many decisions of the state courts collated in 17 L.R.A.(N.S.) 609; note to State of North Dakota v. Murphy, 17 N. D. 48, 115 N.W. 84, 16 Ann.Cas. 1133."

In conclusion the court below committed error in submitting to the jury the question of the ratification of the act of Keating in forging the name of Breslin to the indemnity agreement and in giving additional instruction to the jury in the absence of counsel for Breslin, or notice to them, and for this reason the judgment of the court below is reversed and a new trial is awarded.