## DE WATERS v. MACKLIN CO.
### No. 10513.

Circuit Court of Appeals, Sixth Circuit.
April 26, 1948.

Jack N. Tucker, and Morton A. Eden, both of Detroit, Mich., for appellant.

M. F. Badgley, of Jackson, Mich., and Frank Cooper, of Detroit, Mich. (Bisbee, McKone, Badgley & McInally and Maxwell F. Badgley, all of Jackson, Mich., and Beaumont, Smith & Harris, and Frank E. Cooper, all of Detroit, Mich., on the brief), for appellee.

Frederick U. Reel, of Washington, D. C., for Wage and Hour Division as amicus curiae.

Before MARTIN, McALLISTER, and MILLER, Circuit Judges.

MILLER, Circuit Judge.

This action was filed in the District Court by numerous employees of the Macklin Company, appellee herein, in which they sought judgment against the appellee in the amount of $1,500,000 as overtime compensation and liquidated damages, plus costs and attorneys' fees under the provisions of the Fair Labor Standards Act of 1938. 29 U. S.C.A. §§ 201 through 219. After the plaintiffs' evidence was completed as to one of the employees only, namely, Harvey De Waters, the appellant herein, the District Court sustained appellee's motion for a separate trial as to DeWaters, following which the appellee moved for a judgment in its favor. This motion was sustained and judgment entered in favor of the appellee from which this appeal was taken.

The Macklin Company is a Michigan corporation with its principal offices in Jackson, Michigan. It is engaged in the manufacture of grinding wheels and abrasive products, selling most of its goods upon specific orders, and employing approximately 400 employees. It is conceded that it is in the production of goods for commerce within the meaning of the Act; accordingly, no question of jurisdiction is involved.

The appellee operates in a highly competitive field, and in order to maintain a high quality in its products and meet competition it has attempted to secure the co-operation of its employees. It has adopted numerous company plans providing employee benefits, such as a hospitalization and surgical benefit plan, an annuity plan, a group insurance plan, and the "Macklin benefit fund;" a recreation field has been provided. For a number of years it has employed all hourly rated employees, except guards, at fixed hourly rates, which voluntarily increased progressively from time to time without demand on the part of the employees. The employees were not represented by a union until after one was organized in February 1945. The general fixed base hourly rates have increased from sixty-five cents in March 1937 to ninety cents in June 1942, since which date it has remained constant. Substantially all the plaintiffs named in this suit are employed at the fixed base rate of ninety cents an hour. Prior to the effective date of the Act the appellee paid its hourly rated employees on a straight time basis for overtime work. Since the effective date of the Act, payment for overtime work has been at the rate of 150% of the straight time rate. The

appellant DeWaters was paid at a rate of not less than one and one-half times his agreed regular rate for each hour of overtime that he worked.

Over a period of years appellee's business has materially fluctuated, making it necessary at times to lay off a large portion of its employees and giving only part-time employment to others. In order to meet in part this situation and to increase the productive efficiency of the plant, the appellee, during the summer of 1938, proposed an income-sharing plan, called the "Production Savings Plan," which would supplement wages received from the fixed hourly rates. The plan was not suggested by the employees. It was developed, agreed upon and put into operation on October 1, 1938 prior to the effective date of the Fair Labor Standards Act. The District Judge found as a fact that it was not, however, made effective for the purpose of circumventing the Act, but was to provide in a realistic and mathematically workable manner an additional incentive hourly premium rate to an existing wage structure of fixed hourly rate with time and a half for overtime.

The Production Savings Plan operated as follows:

(1) A production value was given to each item produced that entered the inspection department, which value was the list price less the trade discount. The total production value was calculated monthly with adjustments for partially manufactured products. (2) A certain percentage of this total monthly production value was then computed. This percentage bore close relation to the direct labor costs of production in preceding years. At the inception of the plan it was 19%, but from time to time thereafter it was increased an additional 1% until it became 24% in April 1943, where it has remained. (3) The total hourly wages in straight time and overtime for those eligible under the plan was then computed for that month. (4) If the total of the hourly wages for the month exceeded the percentage of the production value for the month, the employees received no additional compensation; but if the total of the hourly wages paid was less than the percentage of the total production value the difference

was distributed to the employees as additional compensation. (5) This additional compensation was distributed as follows: The amount to be distributed was divided by the total actual labor costs, including both straight time and overtime (less the hourly wages paid to ineligible employees), which resulted in a percentage figure, which became the bonus rate for that month. Each employee's total monthly straight time pay and overtime pay was increased by this percentage. Since the plan has been in operation there have been only two months when no fund was available for such distribution. There was no provision in the plan for recovery from the employees of any portion of the funds so distributed in the event the amount allocable in any month was less than the amount paid at the fixed hourly rates. There is no way to determine what part, if any, of the funds available for distribution was due to the increased efficiency of the production employees, since it represented the combined result of numerous factors, including the installation of new and improved machinery, improvement in the engineering services, operation of the plant to more nearly capacity, the efficiency of the sales department and of the management.

The District Judge found as facts that the appellee has at all times kept the Wage and Hour Division advised of the operation of the plan; that there is no evidence that the plan has not met with the complete approval of the Department of Labor; that up to the time this action was contemplated the plan as agreed to and carried out was mutually satisfactory to both the employer and the employees; that the appellee has made a good faith effort to comply with the Act and has made a good faith attempt to share with its production employees, not only any increased income resulting from increased efficiency of these production employees, but also a substantial part of the increased income resulting from its investment in improved machinery and from the improvement of its engineering and management; and that the employment contract divides the incentive wages into regular and overtime hourly segments in a realistic and mathematically workable manner.

Section 7 of the Act (Sec. 207, Title 29 U.S.C.A.), provides that no employer shall, except as otherwise provided, employ any employee for a work-week longer than 40 hours "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." The question presented is, what is "the regular rate" at which the employee was employed. Appellant contends that this "regular rate" of pay must be determined from the total wages paid an employee, and that total wages included both the wages received at the regular hourly rate and also the entire amount distributed to him as his share of the production savings. Appellee contends that the "regular rate" at which the employee was employed was the regular contract rate of 90 cents per hour plus that portion of the production savings, which was allocated under the plan to straight time compensation; and conversely that that portion of the production savings which was allocated under the plan to overtime compensation did not constitute a part of the regular rate.

Appellant, in support of his contention, urges that in effect he is paid on a piece rate basis with a minimum guarantee per week, pointing out that any increase in pay over the regular hourly rate is the result of the increase in the monthly production value of the plant, which in turn is the result of increased efficiency in piece work by each production employee. He relies upon the established rule that the Fair Labor Standards Act is applicable to employees compensated on a piece rate basis, United States v. Rosenwasser, 323 U.S. 360, 65 S.Ct. 295, 89 L.Ed. 301; and the rulings in Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705, and Walling v. Harnischfeger Corp., 325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711, applying that rule. Reliance is also placed upon the Supreme Court's definition of the words "regular rate" as stated in Walling v. Helmerich and Payne, 323 U.S. 37, 40, 65 S.Ct. 11, 13, 89 L.Ed. 29, and restated in both the Rosenwasser and Youngerman-Reynolds Hardwood Co. cases, supra. There it was said that the words "regular rate" "mean the hourly rate actually paid

for the normal, non-overtime workweek," for which he is employed. As further defined in the Youngerman-Reynolds Hardwood Co. case [325 U.S. 419, 65 S.Ct. 1245], "The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact. Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts."

In our opinion, however, those cases are not the controlling ones in the present controversy. Their rulings are based essentially upon the fact that the employee was *actually* compensated upon a piece rate basis and that the amount received by reason of the piece rate basis during the regular workweek was the regular pay rather than the amount received by application of the hourly rate basis specified in the contract. As pointed out in the Youngerman-Reynolds Hardwood Company case, "The 35-cent per hour 'regular rate' fixed by the contracts is obviously an artificial one, however bona fide it may have been in origin. Except in the extremely unlikely situation of the piece work wages falling below a 35-cent per hour figure, this 'regular rate' is never actually paid." And as stated in the Harnischfeger Corporation case, [325 U.S. 427, 65 S.Ct. 1249] "Piece work wages do not escape the force of Section 7(a) merely because they are paid in addition to a minimum hourly pay guaranteed by contract. Indeed, from another viewpoint, the incentive employees so compensated are in fact paid entirely on a piece work basis with a minimum hourly guaranty." In the present case the employees were not piece rate workers and were not employed on a piece rate basis. The evidence is uncontradicted that the contract of employment was at an hourly rate plus an incentive pay plan; it contained no piece rate schedule. We do not agree with appellant's contention that the addition of the incentive pay plan turned the contract into one on a piece rate basis.

Rather its nature was that of a profit sharing plan. The profits to be so shared were the combined results of the efficient efforts of all employees, all departments, and the management. No individual employee received his additional compensation on the basis of what he individually did, or on the basis of his individual piece rate production. One individual employee, or even a group of employees, might be less efficient than normally in one particular month, yet due to the increased efficiency of other employees, or other departments, or on the part of the management, or by the reason of the installation of improved machinery, the total result for that month might show a production savings fund available for distribution.

■ This case is accordingly governed by determining the "regular rate" at which the appellant was employed according to the Supreme Court's general definition thereof, instead of applying the rulings applicable to piece rate employment. As pointed out by the cases above referred to, it becomes merely a matter of mathematical computation. After first ascertaining the total compensation (which includes both the regular wages at the contract hourly rate and any bonus or profit sharing) actually paid during the normal, non-overtime work-week, such total compensation is then divided by the number of hours actually worked during the same normal, non-overtime work-week, (additional overtime work, if any, being excluded in making such computation). The overtime work in that week is then to be paid for at one and one-half times this regular rate so computed. Applying that rule to the present case, the appellant has been fully paid. The amount of the production savings available for distribution in any one month was allocated under the plan, part to straight time employment and part to overtime employment. The part allocated to and paid for straight time employment was added to the wages received through the contract hourly rate for the non-overtime work-week, and this total amount used in determining the regular rate for that week. Overtime work in that week was paid for at one and one-half times that rate, using in part for that purpose

that part of the production savings allocated under the plan to overtime employment. Appellant's error consists in attempting to treat *all* of the production savings as being paid for regular non-overtime work, although the plan, by contract, provides otherwise. There is nothing in the Act which prohibits such an allocation. There is nothing in the Act which requires profit sharing in any manner or to any extent. If appellee's plan had distributed only a half, or a third, or less, of the production savings, instead of all of it, and allocated the distribution entirely to straight time work, it would not have been objectionable. It would have increased the "regular rate" of pay with a resulting increased obligation for overtime. This increased obligation for overtime could have been paid out of the other half or two-thirds of the production savings which it did not distribute. Allocating such a portion of it to its overtime obligation, rather than merely withholding it, reached the same result.

The cases above referred to, and relied on by appellant, recognize the fundamental principle that as long as the minimum hourly rates established by Sec. 6 of the Act are respected, the employer and the employee are free to establish the regular rate of pay at any point and in any manner they see fit, and to agree to pay compensation according to any time or work measure they desire, so long as it is not in an unrealistic and artificial manner which would negate the statutory purposes. 325 U.S. 419, at page 424, 65 S.Ct. 1242. See also Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716. The contractual rates which were held invalid by the Supreme Court in the cases relied on by appellant were not established in a bona fide manner; they were held invalid because of their wholly unrealistic and artificial nature. See Walling v. Helmerich & Payne, supra, 323 U.S. 37, at page 42, 65 S.Ct. 11; Walling v. Youngerman-Reynolds Hardwood Co., supra, 325 U.S. 419, at page 426, 65 S.Ct. 1242; and Walling v. Harnischfeger Corp., supra, 325 U.S. 427, concurring opinion at page 433, 65 S.Ct. 1246, where in each instance the artificiality of the contract wage rate was distinguished from the bona fide

contract wage rate approved in Walling v. A. H. Belo Corp., supra. Although it has been contended that the decision in Walling v. A. H. Belo Corp., supra, has been in effect overruled by the Supreme Court by its later decisions in the Helmerich & Payne, Youngerman-Reynolds Hardwood Co., and Harnischfeger Corp. cases, this contention was specifically dealt with and rejected by the Court in Walling v. Halliburton Oil Well Cementing Co., 331 U.S. 17, 67 S.Ct. 1056, where the rule of the A. H. Belo Corp. case was again applied and the case itself approved. In the present case the contract hourly rate is essentially a bona fide one. An original lower contract hourly rate was established some ten years prior; the present rate of 90 cents per hour is the result of successive voluntary increases by the Company and in the absence of any employee demands for an increased rate. It was the rate actually in existence and at which compensation was actually paid for a number of years before the production savings plan was proposed for the purpose of promoting incentive and increased efficiency among production employees. The contract of employment contained a bona fide hourly rate, and, as found by the District Judge, provided in a realistic and mathematically workable manner an additional incentive hourly premium rate, which fully complied with the overtime provisions of the Act. Walling v. A. H. Belo Corp., supra; Walling v. Halliburton Oil Well Cementing Co., supra.

Appellant's contention that this case is controlled by our earlier decision in Walling v. Wall Wire Products Co., 6 Cir., 161 F.2d 470, disregards the essential difference between the profit sharing plans in the two cases. In that case the profits shared with the employees were distributed on the basis of the actual number of hours worked straight time, regardless of the total number of hours worked; the employees did not receive any of the profits shared for their overtime work. In the present case only a portion of the "production savings" was allocated by the contract to straight time.

■ Appellee urges as an additional defense to the action, for the first time in this court, the provisions of Section 9 of the Portal-to-Portal Act of 1947, Ch. 52, Public Law 49, May 14, 1947, 29 U.S.C.A. § 258, which provides in substance that in any action commenced prior to the date of the enactment of the Act, no employer shall be subject to any liability to pay minimum wages or overtime compensation under the Fair Labor Standards Act "if he pleads and proves that the Act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, * * *." This action was filed May 24, 1945; the judgment was entered on December 31, 1946, both dates being prior to the enactment of the Portal-to-Portal Act. Accordingly, the provisions of the Act were not considered by the District Court. We recognize the rule that where there is a change in the applicable law subsequent to the judgment in the trial court and pending appeal, the reviewing court will apply the law as it is at the time of the review. Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327; Carpenter v. Wabash R. Co., 309 U.S. 23, 27, 60 S.Ct. 416, 84 L.Ed. 558. But the rule is not applicable where the issue has not been made in the trial court and the court's judgment does not include a ruling on the issue. Helvering v. Wood, 309 U.S. 344, 348, 349, 60 S.Ct. 551, 84 L.Ed. 796; Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 498, 57 S.Ct. 569, 81 L.Ed. 755; General Utilities and Operating Company v. Helvering, 296 U.S. 200, 206, 207, 56 S.Ct. 185, 80 L.Ed. 154; see also Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037.

■ In any event, Sec. 9 of the Portal-to-Portal Act permits the defense relied upon only "if he pleads and proves" reliance upon the administrative ruling. Such defense was neither pleaded nor proved in this case. It first appears in the record in appellee's proposed findings of fact submitted to the trial court. We do not believe this constitutes the pleading required by the Act. Proposed findings of fact and conclusions of law are authorized by the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, but are not required. Rule 52(a)

700

F.R.C.P.; Saco-Lowell Shops v. Reynolds, 4 Cir., 141 F.2d 587; Taylor Instrument Companies v. Fee & Stemwedel, 7 Cir., 129 F.2d 156, 160, 161. Pleadings have been defined by the Supreme Court as "allegations made by the parties to a civil or criminal case for the purpose of definitely presenting the issue to be tried and determined between them." Tucker v. United States, 151 U.S. 164, 168, 14 S.Ct. 299, 301, 38 L.Ed. 112. See also Brownfield v. South Carolina, 189 U.S. 426, 428, 23 S.Ct. 513, 47 L.Ed. 882. Rule 7(a), F.R.C.P., limits pleadings to complaints, answers, and replies. Nor does the record show any finding by the trial court that the appellee relied upon any administrative regulation or approval. The District Court's finding that the appellee made a good faith effort to comply with the Fair Labor Standards Act, that it at all times kept the Wage and Hour Division advised of the operation of the plan, and that there is no evidence that the plan has not met with the complete approval of the Department of Labor, is not a finding of the facts required by the Act to constitute exemption from liability. But under our ruling as above stated, this defense is not necessary.

The judgment of the District Court is affirmed.