**CHARLES A. WRIGHT, INC., Plaintiff, Appellant,**

v.

**F. D. RICH CO., Incorporated, Defendant, Appellee.**

No. 6581.

United States Court of Appeals
First Circuit.

Heard Nov. 2, 1965.

Decided Jan. 5, 1966.

---

3. 29 U.S.C.A. 160(e); Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

Louis Kerlinksy, Springfield, Mass., for appellant.

Charles S. Cohen, Springfield, Mass., with whom Stephen A. Moynahan and Benjamin D. Novak, Springfield, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, and HASTIE * and McENTEE, Circuit Judges.

McENTEE, Circuit Judge.

This is a diversity suit for breach of contract. Between February and October of 1954 plaintiff entered into a series of eleven contracts with the defendant to do certain excavation and other work at Westover Air Force Base and Hanscom Air Force Base in Massachusetts as a subcontractor for the defendant who had general contracts with the United States Government for the construction of certain facilities there. Payments under these contracts were to be made by the defendant monthly on the basis of 90% of the value of the work satisfactorily completed by the plaintiff during the previous month. Plaintiff commenced the work and the defendant began making monthly payments. During the fall of 1954 plaintiff's suppliers began to complain to the defendant that they were not being paid for materials delivered. Thereupon in November, 1954 the plaintiff told the defendant that as of October 31, 1954 the amount of its indebtedness to its suppliers on these jobs (for which defendant would be liable under its contracts with the United States if plaintiff did not pay) was approximately $117,000. During this period defendant was complaining to the plaintiff that he was behind in the work. Also at or about this time defendant stopped the monthly payments on the contracts. The parties conferred with reference to the situation and on December 16, 1954, entered into another contract which was "supplementary and in addition" to the original subcontracts. As a part of this general agreement plaintiff gave defendant a promissory note for $50,000 secured by a chattel mortgage on its machinery and equipment. The supplementary agreement contained, amongst other things, an acknowledgment by plaintiff that it had

* Sitting by designation.

not been performing its said subcontracts in accordance with their terms and that it was behind in the progress of the jobs. Thereafter, the only funds which defendant paid to the plaintiff directly were for net payroll but it did make substantial payments to plaintiff's creditors during the months of December, 1954 and also in January and February, 1955.

In early March defendant received notice that plaintiff's insurance was cancelled for nonpayment of premiums, which again focused attention on the plaintiff's financial condition. Also during the preceding months defendant continued to complain about plaintiff's lack of progress and failure to perform the work as agreed. By this time plaintiff was in breach of its contracts [1] and after notice to the plaintiff dated March 28, 1955, the defendant took over the jobs. In mid April plaintiff was allowed to resume a portion of the work it had been doing at Westover. However, on or about June 15, 1955, defendant discharged plaintiff on this job and terminated all the contracts for failure of the plaintiff to prosecute its work with promptness and diligence and undertook to complete the work. Shortly thereafter, the plaintiff's machinery and equipment were sold at mortgagee's sale and eventually it was declared bankrupt. The trustee in bankruptcy made no claim against the defendant on these sub-contracts.

Plaintiff now seeks damages for defendant's alleged wrongful termination of the contracts. In its answer, the defendant set up plaintiff's failure to pay its creditors and to perform the work with promptness and diligence as agreed. It also counterclaimed to recover losses resulting from plaintiff's breach of the subcontracts. With the consent of the parties, the court referred the case to a master who found, inter alia, that plaintiff breached the contract relating to performance and payment of creditors and that defendant was warranted in terminating on those grounds; that defendant paid plaintiff or on its behalf all monies due under the contracts before they were terminated; that there was no money owed by the defendant to the plaintiff and that the defendant had no valid counterclaim against the plaintiff. The master's report was introduced in evidence at the trial of the case to a jury. The jury returned a verdict for the defendant on plaintiff's claim against it and found for the plaintiff on defendant's counterclaim. Plaintiff appeals from the ensuing judgment entered against it and from the denial of its motion for a new trial.

One of the plaintiff's assignments of error is the court's refusal to give the jury certain instructions. At the close of the testimony, plaintiff submitted fifty-one requests for instructions.[2] After the court had completed its charge plain-

1. Article VI (d) of the eleven subcontracts provides:

"Sub-Contractor shall, when requested, submit to Contractor satisfactory evidence of payment of all indebtedness incurred for material or labor under this contract. If at any time there should be evidence of any lien or claim chargeable to Sub-Contractor for which the Contractor or Owner may become liable, Contractor or Owner shall have the right to retain out of any payment due or to become due, an amount sufficient to fully indemnify Contractor or Owner against such claim or lien. Should any such claim or lien develop after payments are made, Sub-Contractor shall refund to Contractor all monies that the latter may spend in discharging such claims or lien on the premises."

Article IX (a) provides in part:

"Should the Sub-Contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen or of materials of the proper quality or quantity, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements on his part contained herein, Contractor shall be at liberty, * * * to terminate the employment of the Sub-Contractor for said work and to enter on the premises and take possession for the purpose of completing the work included in this contract, * * *."

2. It is a rare case where any such number of requests are required. Unnecessary requests interfere with orderly procedure by creating extra work for the district

tiff's attorney addressed the court as follows: "I would like to object and save my rights to the omission from the charge of plaintiff's requests for instructions to the jury, as follows: number 5, number 8, number 9, number 10, number 11, * * * 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, * * * 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51."

Rule 51, Fed.R.Civ.P. provides:

"No party may assign as error the giving or the failure to give an instruction unless he objects * * *, stating distinctly the matter to which he objects and the grounds of his objection. * * * "

In commenting on this rule this court has said:

"The object of this rule is to afford the trial judge an opportunity upon second thought, and before it is too late, to correct any inadvertent or erroneous failure to charge. The rule also serves to lessen the potential burden of appellate courts by diminishing the number of rulings at the trial which they may be called upon to review." Marshall v. Nugent, 222 F.2d 604, 615 (1st Cir. 1955).

In Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719 (1943), our Supreme Court said:

"In fairness to the trial court and to the parties, objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error. Where a party might have obtained the correct charge by specifically calling the attention of the trial court to the error and where part of the charge was correct, he may not through a general exception obtain a new trial."

■ The above stated general objection made by plaintiff's attorney in this case was hardly of practical assistance to the court. It did not state distinctly the matter to which he objected and the grounds of his objection as required by the rule. The objection was not "sufficiently specific to bring into focus the precise nature of the alleged error" and failed to show the court "distinctly" which of the large number of requests had not been substantially embodied in the charge. Marshall v. Nugent, supra; Sears v. Southern Pacific Company, 313 F.2d 498 (9th Cir. 1963); Johnson v. Chesapeake and Ohio Railway Company, 227 F.2d 858 (7th Cir. 1955); cf. Chernack v. Radlo, 331 F.2d 170, 172 (1st Cir. 1964). Thus, the plaintiff did not properly preserve its objections for review.

Notwithstanding this noncompliance with the rule, our examination of the charge leads us to the conclusion that the jury was fully instructed upon the material issues in this case and under the circumstances the trial court's refusal to give plaintiff's requested instructions was not reversible error.

■ Plaintiff also contends that the trial judge in his charge made certain remarks which were prejudicial to the plaintiff. Specifically it objects to the court telling the jury that it thought "the master's report indicates the proper status of these parties"; that the trustee in bankrupcty did not see fit to bring this action and that the plaintiff brought this suit just before the statute of limitations had run. He contends that in making these latter remarks the court implied the plaintiff had "a poor case." Although we feel that some of these remarks were unfortunate and might have been better left unsaid, in the circumstances of this case we cannot say that the parts of the charge of which plaintiff complains amount to reversible error.

■ The fairness of a charge cannot be determined by considering only a portion of it out of context. On appeal, the charge must be examined as a whole and

court and this court. Furthermore, they may serve to obscure a party's real intentions, the opposite of their proper purpose.

portions of it will not be scrutinized apart from their content as isolated verbal phenomena. Goodyear Fabric Corporation v. Hirss, 169 F.2d 115 (1st Cir. 1948). The trial judge in a federal court may express his opinion upon the evidence, provided he tells the jury that the determination of the facts rests entirely with them. Cf. MacKnight v. United States, 263 F. 832, 838 (1st Cir. 1920), cert. denied, 253 U.S. 493, 40 S.Ct. 586, 64 L.Ed. 1029. This was done. At the outset of the charge the court told the jury: "The facts I will leave to you, with probably some comment, and your decision on the facts is final. * * *" Later in the charge, the court told the jury: "And so, I think you ought to read this master's report. You have a right to reject it, because you are the last judges of the equities of this case." In view of this, and also inasmuch as the evidence of plaintiff's breach is very substantial in this case, we cannot say that the trial judge's comments on the evidence resulted in a verdict which is inconsistent with substantial justice. In so holding we repeat that we do not approve several of the trial judge's comments to the jury, and on a different record some of those comments might well constitute reversible error.

■ Nor do we agree that it was error to admit the master's report into evidence. His findings upon the issues submitted are admissible as evidence of the matters found and may be read to the jury. Fed.R.Civ.P. 53(e) (3). See Ex parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920); Shima v. Brown, 77 U.S.App.D.C. 115, 133 F.2d 48, 49 (D.C.C.A.1943), cert. denied, 318 U.S. 787, 63 S.Ct. 982, 87 L.Ed. 1154; Cabel v. United States, 113 F.2d 998, (1st Cir. 1940). Both parties consented to the court's order of reference to the master and agreed that the master's findings were not to be final and plaintiff cannot now object to the order of reference. The master's report was treated merely as an item of evidence which was entitled to such weight as the jury in its best judgment would accord it.

■■ Plaintiff's difficulties in this case really arose from the fact that the master's report contained certain conclusions of law. It was not good practice for the master to state conclusions of law when his report was not to be considered final and was to be read to the jury. The only purpose in providing that the report shall not be final is to present findings to a jury which may be supplemented or contradicted by further evidence at the trial so that the jury can decide the case on the entire factual picture with rulings of law to be made by the court. However, the plaintiff having consented to the form of the reference, it cannot now complain.

Also, at the trial counsel for the plaintiff attempted to question the treasurer of the plaintiff corporation as to the content of a conversation which took place at the December 16 meeting of the parties. This conversation which was offered to vary the amount, time and conditions of payment by the defendant to and for the plaintiff, took place at the same time the "supplementary" written agreement, the chattel mortgage and the promissory note were executed. Plaintiff contends that the court's exclusion of testimony as to the content of this conversation was reversible error.

■ It is well settled in Massachusetts that "where a writing shows on its face that it includes the whole agreement of the parties and comprises all that is necessary to constitute a contract, it is presumed that they have placed the terms of their bargain in this form to prevent misunderstanding and dispute, intending it to be a complete and final statement of the whole transaction." Glackin v. Bennett, 226 Mass. 316, 115 N.E. 490, 491 (1917); Berman v. Geller, 325 Mass. 377, 90 N.E.2d 843 (1950). To modify, enlarge, or vary the terms of an integrated document by this conversation would have violated the parol evidence rule. Clearly the final agreement of December 16, 1954, which incorporated the eleven subcontracts, was intended to be a complete expression of all the transactions between the parties. It un-

equivocally identified the parties and their respective obligations, and recited the consideration. Thus, the trial court rightly excluded the testimony as to the conversation in question.

All other points raised have been considered and have been found to be without substance.

Affirmed.