Peter J. PETROLE, Appellant,

v.

GEORGE A. FETTER, INC. and George Castimore

v.

Lewis YEZARSKI.

No. 17201.

United States Court of Appeals
Third Circuit.

Argued April 7, 1969.

Decided May 22, 1969.

Elias Magil, Rappeport & Magil, Philadelphia, Pa. (Martin H. Philip, Palmerton, Pa., on the brief), for appellant.

Joseph G. Manta, LaBrum & Doak, Philadelphia, Pa. (James M. Marsh, Philadelphia, Pa., on the brief), for appellees George A. Fetter, Inc. and George Castimore.

John R. Warner, Marshall, Dennehey & Warner, Philadelphia, Pa., for appellee Yezarski.

Before KALODNER, GANEY and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Plaintiff appeals from a January 24, 1968, judgment in this action which was rendered upon a jury verdict in favor of the original defendants, George A. Fetter, Inc. and George Castimore, arising out of personal injury sustained in a motor vehicle collision, and which dismissed the third-party action against Lewis Yezarski. Plaintiff was a passenger in an automobile operated by the third-party defendant, Lewis Yezarski, at the time he suffered the injuries. The Yezarski automobile was traveling in a southerly direction on Route 309 between Hazleton, Pa., and Tamaqua, Pa., during the daylight hours of October 25, 1962, when it struck a tractor-trailer which was owned or leased by George A. Fetter, Inc. and driven by George Castimore. The Fetter vehicle had been proceeding in a northerly direction on Route 309 and was struck by the Yezarski car as the tractor-trailer was negotiating a left turn onto Route 45. Traffic at the intersection of the two routes was directed by a signal which was green at the time the respective vehicles entered the intersection.[1] Defendant Castimore had an unobstructed view of from one-half block to 560 feet in the direction from which Yezarski's car was approaching.[2]

Plaintiff sued Castimore and his employer; they joined Yezarski as third-party defendant. Plaintiff made no direct claim against Yezarski. The trial judge submitted interrogatories to the jury at the close of the trial and they found that the original defendants were not negligent, but that third-party defendant, Yezarski, was negligent and that his negligence was the proximate cause of the collision.

The plaintiff's primary contentions are that he is entitled to a new trial because the instructions to the jury were inadequate and because the jury's verdict was coerced by the trial judge.

Plaintiff alleges that the trial judge erred in failing to charge on the specific duties of care required of vehicle operators by the Motor Vehicle Code and case law which sets forth the applicable duties, as described in the plaintiff's Points for Charge;[3] plaintiff further contends,

1. Both defendant Castimore and third-party defendant Yezarski testified that the light was green as they entered the intersection.

2. Defendant Castimore admitted that his clear view in the direction from which the Yezarski car was approaching was half a city block or more, even though he did not see the car until it was eight or ten feet away. The police officer estimated the clear view to be 300 feet. The actual distance was measured at 560 feet.

3. The following are relevant Points for Charge submitted by the plaintiff which the court failed to charge:

"1. It was the duty of Defendant Castimore to look for oncoming traffic or traffic which might be affected by the movement of his vehicle and to continue to look for such traffic at the intersection before and during the course of making his turn: * * * [citing cases].

* * * * *

"3. Before a motorist may make a left turn at an intersection he must first signal his intention to do so and in addition must first reasonably assure himself that upon making such turn he will not place others using the highway in danger of injury: * * * [citing cases].

"4. Under the Motor Vehicle Code of Pennsylvania 'the driver of any vehicle upon a highway before ***turning from a direct line ***shall first

inter alia, that the court coerced the jury and committed error when it recalled them into the courtroom at 6:15 P.M., having had no dinner, and told them they must continue their deliberations until they reached a verdict. They returned 22 minutes later with their verdict.

We reverse the judgment of the District Court and hold that a new trial is required because of inadequate and prejudicial instructions given the jury by the trial judge.

The instructions to the jury were inadequate because they failed to include any explanation of the specific duties imposed upon Castimore and Yezarski by the Motor Vehicle Code of Pennsylvania and the relevant case law.[4] The instructions on negligence were too broad, mentioning only the "reasonable man standard," and disregarding the duties imposed by the Code and cases.[5]

In instances, as here, where the legislature has fixed a standard of care designed to protect people in the plaintiff's position or to prevent the type of accident which occurred, it is error for the court to fail to explain that standard in the charge to the jury. See Walsh v. Miehle-Goss-Dexter, Inc., 378 F.2d 409 (3rd Cir. 1967). Cf. Richardson v. Gregory, 108 U.S.App.D.C. 263, 281 F.2d 626, 629 (1960). The above principle is particularly applicable here where the trial judge was or should have been, alerted by plaintiff's Points for Charge that both the Motor Vehicle Code and case law articulate duties encumbent upon the defendant's driver when executing a left turn.[6] Since the plaintiff excepted to the court's failure to charge these duties, he properly preserved his right to appeal this error.[7] In this case,

see that such movement can be made with safety. ***Before making any such vehicle movement, the driver shall give a plainly visible signal in the manner described in this section. The signal shall be given one hundred (100) feet in advance of and during the turning movement or lane change.' Motor Vehicle Code of Pennsylvania, 75 P.S. Section 1212(f) [sic]."

The failure to charge the foregoing Points for Charge was specifically objected to at the end of the charge.

4. In pertinent part, the Motor Vehicle Code provides:
"§ 1012(a). Signals on * * * turning * * *
"(a) The driver of any vehicle upon a highway before * * * turning from a direct line * * * shall first see that such movement can be made with safety * * *. Before making any such vehicle movement, the driver shall give a plainly visible signal in the manner described in this section. The signal shall be given one hundred (100) feet in advance of and during the turning movement * * *." 75 P.S. § 1012.

The Pennsylvania case law makes it clear that a motorist making a left turn at an intersection may do so only after first having reasonably assured himself that, by his so doing, others using the highway will not be placed in danger of injury. Sollinger v. Himchak, 402 Pa.

232, 166 A.2d 531 (1961); Martin v. Arnold, 366 Pa. 128, 132, 77 A.2d 99 (1950). A motorist at an intersection must be alert and observe conditions before entering the intersection and he must continue to look as he proceeds through. Burish v. Digon, 416 Pa. 486, 206 A.2d 497 (1965).

5. The following language constituted the complete charge on negligence:
"Now, members of the jury, I want to describe to you what negligence is. First of all, as counsel pointed out to you, negligence is a very simple term. It is doing that which a prudent person would not do under the circumstances or failing to do what a prudent person would do under the circumstances. In other words, from your ordinary life experience, determine among yourselves is it negligent to do this, is it negligent not to do that? You must remember omission and commission. It is a very simple thing, really.
"Applying it to the case, did this truck driver do something which an ordinarily prudent person would not do under the circumstances? That is the issue. Did he act as you or I would act under the circumstances or didn't he?
"Likewise as to Mr. Yezarski, did he act as a prudent person would?"

6. See footnotes 3 and 4, supra.

7. This case differs from our recent decision in Piechoski v. Grace Lines, Inc., 409 F.2d

**8**

the charge was so general, despite plaintiff's specific requests, that it could not give the jury adequate assistance in fixing the standards of care required under the circumstances. See Ryan v. United Parcel Service, 205 F.2d 362 (2nd Cir. 1953).

■ The trial court also erred in recalling the jury to inform it that deliberations would continue until a verdict

66 (3rd Cir., 4/8/69), because plaintiff here based his claim on Castimore's failure to meet the duty of care imposed by case law and the Motor Vehicle Code, which duties were not explained in the charge but which had been included in the plaintiff's Points for Charge. In *Piechoski*, we condemned the number of points requested (38) in light of the number of issues involved. In this case there were fewer requests (21), and while we think that even that many was more than necessary, we note that only the first 13 related to standards of care and negligence. We are unable to say, therefore, that the number was inordinate and justified out-of-hand rejection by the trial judge; that is particularly true where the points should have alerted the trial judge to the applicability of the Motor Vehicle Code, as well as to the other rules set forth in footnote 4.

The instant case is also distinguishable from Charles A. Wright, Inc. v. F. D. Rich Co., 354 F.2d 710, 712–713 (1st Cir. 1966), where the court held that a general objection, simply stating the numbers of the requested points for charge, was insufficient to meet the requirements of Rule 51 of the Federal Rules of Civil Procedure and failed to preserve the objections for review because "[t]he objection was not 'sufficiently specific to bring into focus the precise nature of the alleged error' and failed to show the court 'distinctly' which of the large number of requests had not been substantially embodied in the charge." 354 F.2d at 713. In this case, there were thirty fewer points for charge than in *Wright;* the points here were or should have been of practical assistance to the trial judge because they pointed out duties owed the plaintiff; and the trial judge specifically told plaintiff's counsel after the charge that it was sufficient simply to object by number to those points which plaintiff contended were erroneously excluded from the charge (see footnote 3).

was reached.[8] Ordinarily, instructions to the jury should not be given in the absence of counsel. See Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853 (1919).[9] However, it is not necessary to reach the issue of absence of counsel at the time of the instruction. Cf. Arrington v. Roberts, *supra*. On this record we hold that this instruction was coercive and constituted reversible error.[10] At 6:15 P.M., without

8. The following is the language used by the trial judge:
"Now, I don't like to say this, but I am going to say it. You are going to remain out deliberating this case until it is determined. I don't know how long that is going to be; that is up to you. You are all intelligent people; we have a record of you here in the Court, and to me it is amazing that after four hours you can't come to a fair and just verdict. I don't know what the problem is because you haven't told me and I am not going to ask you, but I am going to tell you this, I don't want to be arbitrary or impatient about it, but I have made up my mind that until you do reach a verdict you are going to have to continue your deliberations."
This direction was given over 5¼ hours after the jury was sent from the courtroom with instructions to start deliberations when they came back from lunch (N.T. 493, 495).

9. This court has stated that instructions to the jury should not be given in the absence of counsel. Snyder v. Lehigh Valley Railroad Company, 245 F.2d 112 (3rd Cir. 1957); Arrington v. Roberts, 114 F.2d 821 (3rd Cir. 1940); Breslin v. National Surety Co., 114 F.2d 65 (3rd Cir. 1940). It is noted that prior to the time the jury announced its verdict, but after it had apparently reached agreement, the plaintiff's counsel specifically objected to the language quoted in footnote 8, *supra*.

10. See Annotation, 19 A.L.R.2d 1257, 1263 (1950) and the cases cited therein, where the general rule is stated in the following language:
"In a number of * * * cases it has been held improper, at least under the particular circumstances, for the trial judge to refer to the inconveniences to which the jury are to be subjected, or to the time during which he intends to keep them together, or even to the time when their verdict is to be returned, in such a way that the remarks might be regarded

any explanation that food would be made available to the jurors, the court directed this jury to continue deliberations until they reached a verdict, telling them that the case was "not complicated" nor "very difficult", though in the original charge the court termed the case "not an easy case" and "rather complicated".[11]

For the foregoing reasons, the judgment of the District Court will be reversed and the case remanded for a new trial.

as tending to force or coerce a verdict."
19 A.L.R.2d at 1263.

11. Since a new trial is required for the above-stated reasons, it is not necessary to consider the other contentions of plaintiff that additional errors took place during the trial.

We call the attention of counsel for plaintiff-appellant and of the Bar to the fact that where isolated excerpts from the transcript are to be included in the Appendix, the pages of the notes of testimony should be specified so that the context of the excerpt can be ascertained.